**Rebecca J. HIGHTOWER, Appellant,**

v.

**Robert H. SAXTON, M.D., Robert H. Saxton, M.D., P.A., and Fred A. Walters, M.D., Appellees.**

**No. 10–99–364–CV.**

Court of Appeals of Texas, Waco.

July 25, 2001.

Rehearing Overruled Aug. 22, 2001.

Greg White, McGregor & White, Waco, Jerry Galow, Watson, Bishop, Long & Galow, P.C., Austin, for appellant.

Dorothy Prengler, Law Offices of Dorothy Prengler, Dallas, for Robert H. Saxton, M.D.

David Dumas and Alfred Mackenzie, Haley Davis, P.C., Waco, for Fred A. Walters, M.D.

Before Chief Justice DAVIS, and Justices VANCE and GRAY.

## OPINION

VANCE, Justice.

Rebecca Hightower filed suit alleging medical malpractice against two physicians, Robert Saxton, M.D. ("Dr.Saxton") and Fred Walters, M.D. ("Dr.Walters"). Dr. Saxton and Dr. Walters each filed a Motion to Dismiss under article 4590i, section 13.01 of the Medical Liability and Insurance Improvement Act. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e) (Vernon Supp.2001). While the motions were pending, Dr. Walters filed a motion for summary judgment. On October 5, 1999, the trial court granted Dr. Saxton's motion to dismiss with prejudice and Dr. Walters's Motion for Summary Judgment. Hightower appeals both rulings. We will affirm.

## DISCUSSION

Hightower brings five issues on appeal. Issues one and two involve the trial court's granting of Dr. Saxton's Motion to Dismiss. Our discussion of the dismissal will concern whether Hightower's expert's affidavit was adequate under section 13.01, and whether a supplemental affidavit could have cured its inadequacies, if any. Issues three, four, and five involve the trial court's granting of Dr. Walters's Motion for Summary Judgment. Our discussion of the summary judgment will concern whether Hightower's expert's supplemental affidavit raised a fact issue sufficient to defeat a no-evidence summary-judgment motion.

### Dr. Saxton's Motion to Dismiss

In November 1995, Hightower injured her back on the job while picking up a forty pound tray of potatoes. Hightower went to Dr. Saxton, who recommended surgery. On December 26, 1995, Dr. Saxton performed surgery on her back. The surgery did not help, and on December 11, 1997, Hightower filed suit alleging medical negligence.

On July 20, 1998, Dr. Saxton filed a Motion to Dismiss, claiming that under section 13.01 Hightower had failed to furnish an adequate expert report or curriculum vitae within 180–days of filing her lawsuit. In her response to the motion, Hightower contended that she had furnished Dr. Randall F. Dryer's affidavit,

which served as an expert report, and that all parties had timely received his curriculum vitae (CV).

On October 5, 1999, the trial court granted Dr. Saxton's Motion to Dismiss, and dismissed Hightower's suit with prejudice. It is not clear from the trial court's order whether the dismissal was based on the report, the curriculum vitae, or both.

### a. Section 13.01

The Supreme Court recently discussed the section 13.01 requirements for bringing a medical malpractice claim. *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 44 Tex. Sup.Ct. J. 720, 721, 2001 WL 491205, at *2 (May 10, 2001). In *Palacios,* the court stated:

> Texas courts have long recognized the necessity of expert testimony in medical-malpractice cases. *E.g., Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1966); *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (Tex.1949). "There can be no other guide [than expert testimony], and where want of skill and attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury." *Hart,* 399 S.W.2d at 792. Because expert testimony is crucial to a medical-malpractice case, knowing what specific conduct the plaintiff's experts have called into question is critical to both the defendant's ability to prepare for trial and the trial court's ability to evaluate the viability of the plaintiff's claims. This makes eliciting an expert's opinions early in the litigation an obvious place to start in attempting to reduce frivolous lawsuits.

*Id.* Accordingly, the Legislature requires under section 13.01:

● Medical-malpractice plaintiffs, within 180 days of filing suit, must *either* provide each defendant physician and health-care provider with an (1) expert report and (2) the expert's curriculum vitae, *or* nonsuit the claims. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d).

● If the plaintiff fails to provide a report and CV or nonsuit the case, the trial court must sanction the plaintiff by dismissing the case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the forfeiture of any applicable cost bond necessary to pay that award. *Id.* § 13.01(e).

● If the plaintiff does timely file a report, the defendant may move to challenge the adequacy of the report, and the trial court must grant the motion if "it appears to the court ... that the report does not represent a good faith effort to comply with the definition of an expert report." *Id.* § 13.01(*l*).

● The statute defines an expert report as "a written report by an expert that provides a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the care rendered ... failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 13.01(r)(6).

● If a trial court determines that an expert report does not meet these statutory requirements and the time for filing a report has passed, it must then dismiss with prejudice the claims against the defendant who has challenged the report. *Id.* § 13.01(e).

In reviewing a trial court's order to dismiss under section 13.01, we apply an abuse of discretion standard. *Palacios,* 46 S.W.3d at 875. A trial court abuses its

discretion if it acts without reference to any guiding rules or principles—in other words, if it acts arbitrarily or unreasonably. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000).

■ As stated before, it is not clear from the trial court's order whether the dismissal was based on the report, the CV, or both. It is undisputed that the record contains Dr. Dryer's affidavit, so we can analyze it for its adequacy as an expert's report. However, other than counsel's assertions, the record does not contain evidence of when Dr. Dryer's CV was originally produced. An attorney's unsworn factual allegations may not be considered as evidence to support his client's failure or non-failure to comply with article 4590i. *See Minns v. Piotrowski,* 904 S.W.2d 161, 169 (Tex.App.—Waco 1995), *writ denied with per curiam opinion,* 917 S.W.2d 796 (Tex.1996).

Thus, we will first analyze Dr. Dryer's affidavit to determine whether the trial court abused its discretion in finding that it was inadequate as an expert's report. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l* ). If the trial court did not abuse its discretion, then dismissal was appropriate. *Id.* § 13.01(e). If so, we would not reach whether the CV was timely provided.

### b. Adequacy of an expert's report

■ In determining the adequacy of an expert's report under section 13.01, the issue for the trial court is whether "the report" represents a good-faith effort to comply with the statutory definition of an expert report. *Palacios,* 46 S.W.3d at 878 (citing Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(*l* )). That definition requires, as to each defendant, a fair summary of the expert's opinions about: (1) the applicable standard of care, (2) the manner in which the care failed to meet that standard, and (3) the causal relationship between that failure and the claimed injury. *Id.* (citing Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(r)(6)). Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document. *Id.*

The Supreme Court in *Palacios* stated:

A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. In setting out the expert's opinions on each of those elements, the report must provide enough information to fulfill two purposes if it is to constitute a good-faith effort. First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit.

. . .

[However a] report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Nor can a report meet these purposes and thus constitute a good-faith effort if it omits any of the statutory requirements. However, to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial.

*Id.* (citations omitted).

Dr. Dryer's affidavit states in full:

I am an Orthopedic Surgeon, licensed to practice medicine in Texas and currently practicing in Austin, Texas. One of my patients is Rebecca Hightower.

After reviewing Rebecca's medical records, her history, her scans and her current problem, I have concluded that Rebecca Hightower has suffered injuries as a result of malpractice by Robert Saxton, M.D. and Fred Walters.

It appears to me that Dr. Saxton's surgery was performed below the standard of care, causing injury to Ms. Hightower. In addition, it appears that Dr. Walters misread the MRI scan. The misread was below the standard of care and caused damages and delay of treatment to Ms. Hightower.

We find that Dr. Dryer's affidavit fails to represent a "good-faith effort to comply with the statutory definition of an expert report." *Id.* (citing TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(*l*)). First, the affidavit fails to identify the appropriate standard of care for Dr. Saxton. Dr. Dryer states only that he is an "Orthopedic Surgeon" and "Dr. Saxton's surgery was performed below the standard of care." Second, the affidavit does not inform the manner in which Dr. Saxton failed to meet any unstated standard of care. For instance, is it because Dr. Saxton operated on Hightower's knee instead of her back, or because he used unsterile equipment? Third, the affidavit provides no insight into the causal relationship between the breach and the injury claimed by Hightower.

Furthermore, Dr. Dryer's affidavit does not fulfill the two purposes set out in *Palacios* to constitute a good-faith effort. *Id.* The affidavit fails to inform Dr. Saxton of the specific conduct that Hightower has called into question, and equally important, the affidavit fails to provide an adequate basis for the trial court to conclude that her claims have merit. *Id.*

When the expert's report fails the statutory test, section 13.01(*l*) affords the trial court no discretion but to conclude, as the trial court did here, that the report does not represent a good-faith effort to provide a fair summary of the standard of care and how it was breached, as section 13.01(r)(6) requires. *Id.* at 879. Because the statutory 180 day time period had passed when the trial court made that determination, section 13.01(e) required the court to dismiss with prejudice Hightower's claims. *Id.* (citing TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e)). Thus, we find the trial court did not abuse its discretion in dismissing Hightower's medical malpractice claim based on an inadequate expert report. *Id.* at 875. Issue one is overruled.

■ Although this result is harsh, we believe that Hightower might have cured the defects in the affidavit by filing, before the hearing on the Motion to Dismiss, a motion for a 30–day grace period as allowed by section 13.01(g). TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(g) (A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.).

Instead, twenty-seven days after the hearing, Hightower filed a Brief in Response to Dr. Saxton's Motion to Dismiss, in which she asked for a 30–day grace period. At the same time, she filed a supplemental affidavit attempting to remedy any inadequacies in Dr. Dryer's previous affidavit. However, these actions were untimely and cannot cure the deficient report. *Hargrove v. Denno*, 40 S.W.3d 714, 716 (Tex.App.—San Antonio 2001, no pet.) (appellant's request for extension of time to file her expert report was properly denied as untimely, as motion was not filed until more than two weeks after the trial court heard and granted defendant's motion to dismiss); *Richburg v. Wolf*, 2001 WL 527482, at *4 (Tex.App.—Eastland May 17, 2001, pet. filed) (an appellant, who failed to file a motion for relief under section 13.01(g), could not cure an inade-

quate report with a supplemental report). Issue two is overruled.

### Dr. Walters's Motion for Summary Judgment

■ After Dr. Saxton's surgery failed, Hightower sought an assessment from a radiologist, Dr. Walters. On March 6, 1996, Dr. Walters performed a MRI scan of Hightower's back. Dr. Walters reviewed the scan and noted that "There is no MRI Evidence of a Recurrent Disc Herniation."

In June 1996, Hillcrest Hospital released the MRI results to Hightower, and she took them to Dr. Dryer for his review. Dr. Dryer diagnosed a herniated disk, and recommended additional surgery. Hightower wanted a second opinion, so she took the MRI to another doctor, Dr. James Simmons. Dr. Simmons was supposed to review the MRI results and return them to Hightower's attorney. The MRI results were never returned to Hightower and have not been seen since.

On December 11, 1997, in addition to suing Dr. Saxton for medical negligence related to her back surgery, Hightower also brought suit against Dr. Walters for negligence in failing to properly read her MRI results.

On July 22, 1998, Dr. Walters filed a Motion to Dismiss pursuant to article 4590i section 13.01, which alleged the same grounds for dismissal as Dr. Saxton.

On June 22, 1999, while his Motion to Dismiss was still pending, Dr. Walters filed a Motion for Summary Judgment. The motion argued that Dr. Walters was entitled to a traditional summary judgment because he complied with the applicable standard of care. Dr. Walters attached deposition testimony to show that a reasonable and prudent medical professional would have reached the same conclusion as he did in reading Hightower's MRI results.

The motion also argued that Dr. Walters was entitled to a "no-evidence" summary judgment. Dr. Walters claimed that because the exact MRI images were apparently lost, there is "no evidence" which supports Hightower's claim that he misread them, and in fact, under the common law on spoliation, he is entitled to the presumption that the lost MRI images support his conclusion of Hightower's condition. Dr. Walters claimed that the testimony of Dr. Dryer or Dr. Simmons—the Plaintiff's two experts who reviewed the MRI images after she contacted an attorney with respect to the alleged complaints against Dr. Saxton—would not "rebut" the spoliation presumption.

Contemporaneously and alternatively, Dr. Walters also filed a Motion for Sanctions pursuant to Rule of Civil Procedure 215. Tex.R. Civ. P. 215. Dr. Walters argued that it would be extremely difficult to defend against Hightower's allegations without being able to inspect the exact MRI images that he reviewed. Thus, Dr. Walters requested the trial court to exclude any testimony by either Dr. Dryer or Dr. Simmons related to their review of the missing MRI images.

On August 12, 1999, Dr. Walters filed additional summary judgment evidence in support of his spoliation and sanction claims. Specifically, Dr. Walters referred to deposition testimony of Mary Ann Vance, a designated representative of Hillcrest Hospital, which is where Hightower's MRI results were kept before being released to her. Vance testified that, although the Radiology Department at Hillcrest might be able to retrieve images stored on an optical disk, there is no way to recreate the specific MRI images that were reviewed by Dr. Walters in March 1996.

On August 26, 1999, Hightower responded to Dr. Walters's Motion for Summary Judgment and Motion for Sanctions. In her response, Hightower addressed Dr. Walters's motion from the "no-evidence" standpoint only. Hightower argued that the "no-evidence" Motion for Summary Judgment should be denied because: (1) her failure to produce the MRI images does not warrant a spoliation presumption adverse to her cause of action; and (2) the testimony of her medical expert, Dr. Dryer, rebuts any presumption arising from her failure to produce the MRI images, thus raising an issue of material fact concerning Dr. Walters's compliance with the applicable standard of care. Hightower attached the supplemental affidavit of Dr. Dryer as summary judgment evidence.

Hightower argued that the Motion for Sanctions should be denied because: (1) the exclusion of Hightower's expert testimony is not needed to "level the evidentiary playing field"; (2) the requested sanction is unjust because the exclusion of Hightower's expert testimony is tantamount to a "death penalty" sanction; and (3) Texas courts have yet to exclude testimony as a sanction for the *unintentional* spoliation of evidence.

On September 1, 1999, Dr. Walters brought five objections to Hightower's summary judgment evidence filed in response to his Motion for Summary Judgment. The first three objections concerned hearsay statements and claims that Hightower's deponents testified on matters requiring expert testimony. Objection four argued that Dr. Dryer's supplemental affidavit is not competent summary judgment evidence. Pertaining to Dr. Walters, Dr. Dryer's supplemental affidavit stated:

> I am an Orthopedic Surgeon, licensed to practice medicine in Texas and currently practicing in Austin, Texas. One of my patients is Rebecca Hightower. After reviewing Rebecca's medical records, her history, her scans and her current problem, I have concluded that Rebecca Hightower has suffered injuries as a result of malpractice of Robert Saxton, M.D. and Fred A. Walters, M.D.
>
> . . .
>
> The standard of care requires when reading an MRI that you read it correctly. I have personally reviewed the MRI. It was reviewed by Dr. Fred Walters, and I have concluded that he misread the MRI. The misread of the MRI, in my opinion, caused injury to Rebecca Hightower.

Dr. Walters claimed that Dr. Dryer's supplemental affidavit states only that he has "concluded that Rebecca Hightower has suffered injuries as a result of malpractice of ... Fred A. Walters, M.D."; that the standard of care requires "when reading an MRI that you read it correctly"; that he had personally reviewed the MRI reviewed by Dr. Walters; that he had "concluded that [Dr. Walters] misread the MRI"; and that, in his opinion, the misread of the MRI "caused injury to Rebecca Hightower." Dr. Walters argued that the affidavit fails to raise a genuine issue of material fact because it fails to set out the factual basis for the opinions. Dr. Walters urges that conclusory statements and legal conclusions in an affidavit submitted in a summary judgment proceeding will neither support nor defeat a motion for summary judgment. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (conclusory statements made by an expert witness are insufficient to support summary judgment); *Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984) (A legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment or to establish the ex-

istence of a fact in support of a motion for summary judgment.).

In his fifth objection, Dr. Walters asserted that Dr. Dryer's supplemental affidavit should be excluded as a sanction for loss of the MRI images on which Dr. Dryer's testimony is based.

On October 5, 1999, the trial court sustained all five objections. In its ruling, on objections four and five, the trial court stated:

> Objection four deals with the affidavit of Dr. Randall F. Dryer and asserts that Dr. Dryer's affidavit in so far as it pertains to any actions by Dr. Walters is merely conclusory does not contain or set any factual basis for the opinions stated. Objection four is sustained.
>
> Objection five asserts that Dr. Dryer's affidavit should be excluded as a sanction for spoliation and the loss of certain MRI films upon which Dr. Dryer's testimony is based. Although this may be moot because the court has already sustained the objection to Dr. Dryers statements as being conclusory. Defendant Walters objection number five is sustained in so far as it pertains to any testimony offered by plaintiff's expert witness Dr. Dryer concerning his review of the MRI films which plaintiff has not produced for review of defendants or their experts.

On October 5, 1999, the trial court also granted Dr. Walters's Motion for Summary Judgment and stated that, "Based upon the evidence submitted to the Court in the motions for summary judgment the court has no choice but to grant the motion for summary judgment in favor of defendant Fred A. Walters, M.D." Dr. Walters's Motion to Dismiss, however, was never ruled on. Because Dr. Walters does not complain about this on appeal, we will not address whether he was entitled to a dismissal on the same grounds as Dr. Saxton.

### a. Analysis

Dr. Walters's Motion for Summary Judgment raises both traditional and "no-evidence" summary judgment claims. We have held that both claims can be raised in a single pleading so long as the pleading sufficiently segregates the traditional claims from the no-evidence claims. *Fletcher v. Edwards*, 26 S.W.3d 66, 72 (Tex.App.—Waco 2000, pet. denied). We question whether Dr. Walters's motion satisfied this segregation requirement. However, because Hightower's response addressed Dr. Walters's motion from the "no-evidence" standpoint only, we will analyze whether the trial court erred in granting the motion from a "no-evidence" standpoint as well.

Rule 166a(i) of the Texas Rules of Civil procedure states with regard to a no-evidence motion for summary judgment:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX.R. CIV. P. 166a(i).

In her appeal of Dr. Walters's Summary Judgment, Hightower contends, among other things, that the trial court abused its discretion in sustaining Dr. Walters's objections to the supplemental affidavit of Dr. Dryer for being conclusory and for granting sanctions. Without the supplemental affidavit, Hightower has failed to offer any competent summary judgment evidence in support of her pleadings that

Dr. Walters breached the applicable standard of care, and as a result the trial court's grant of the "no-evidence" summary judgment would have been proper.

█ Therefore, we will first analyze Dr. Dryer's supplemental affidavit to determine whether the trial court abused its discretion in excluding it. *Wolfe v.C.S.P.H., Inc.,* 24 S.W.3d 641, 646 (Tex. App.—Dallas 2000, no pet.) (an appellate court will review the trial court's rulings concerning the admission of summary judgment evidence under an abuse of discretion standard). As stated before, a trial court abuses its discretion if it acts without reference to any guiding rules or principles-in other words, if it acts arbitrarily or unreasonably. *K-Mart Corp.,* 24 S.W.3d at 360. If the trial court did not abuse its discretion, there is no evidence to support Hightower's claim against Dr. Walters and summary judgment was appropriate. As a result, we would not reach Hightower's remaining contentions.[1]

***b. How do we determine if an affidavit raises a fact issue sufficient to defeat a no-evidence summary judgment?***

██ To raise a fact issue sufficient to defeat a no-evidence summary judgment, a plaintiff may file a controverting expert affidavit which: 1) specifically identifies the standard of care; 2) establishes the expert's familiarity with that standard; and 3) explains why the treatment rendered by the defendant health-care provider breached the applicable standard. *Silvas v. Ghiatas,* 954 S.W.2d 50, 53 (Tex.

App.—San Antonio 1997, writ denied) (citing *Knetsch v. Gaitonde,* 898 S.W.2d 386, 388 (Tex.App.—San Antonio 1995, no writ)). Conclusory affidavits are not enough to raise fact issues. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996) (citing *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984) (Affidavits consisting of nothing more than conclusions or expressions of subjective belief are not competent summary judgment proof.)). They are not credible, nor susceptible to being readily controverted. *Id.*

In *Silvas,* the San Antonio Court of Appeals held that an affidavit was sufficient to raise material issues of fact precluding summary judgment because it: 1) stated that the expert was familiar with the applicable standard of care, 2) stated that the defendant failed to do what a radiologist using reasonable care and prudence would have done under the same or similar circumstances, and 3) listed specific omissions that breached the standard of care. *Silvas,* 954 S.W.2d at 53.

The El Paso Court of Appeals in *Chopra v. Hawryluk,* 892 S.W.2d 229, 233 (Tex. App.—El Paso 1995, writ denied), held that a summary judgment affidavit offered to establish the standard of care applicable to a radiologist should "give the trial court adequate knowledge of what a reasonably prudent radiologist would do under the circumstances." The court concluded that the affidavit offered in that case failed to "meet the threshold requirement of establishing the standard of care" because the affiant "did not set out the steps necessary

---

1. One of Hightower's contentions is that the trial court should have considered the deposition testimony submitted with her motion for new trial as "late filed summary judgment evidence." When summary judgment evidence is offered after the summary judgment ruling as grounds for a new trial, the trial court properly disregards it as not part of the summary judgment record. *See Morin v. Hel-* *frick,* 930 S.W.2d 733, 738 (Tex.App.—Houston [1st Dist.] 1996), *overruled on other grounds, Rizkallah v. Conner,* 952 S.W.2d 580, 585 n. 4 (Tex.App.—Houston [1st Dist.] 1997, no writ). Accordingly, the trial court did not abuse its discretion by allowing Hightower's motion for new trial to be overruled by operation of law.

to properly read the x-ray, nor does he state what an adequate report should contain." *Id.*

### c. Application

Here, Dr. Dryer's supplemental affidavit states only that he has "concluded that Rebecca Hightower has suffered injuries as a result of malpractice of ... Fred A. Walters, M.D."; that the standard of care requires "when reading an MRI that you read it correctly"; that he had personally reviewed the MRI reviewed by Dr. Walters; that he had "concluded that [Dr. Walters] misread the MRI"; and that, in his opinion, the misread of the MRI "caused injury to Rebecca Hightower."

Dr. Walters argues that the affidavit fails to establish Dr. Dryer's familiarity with the standard of care applicable to a radiologist, fails to explain why the medical services provided by Dr. Walters allegedly breached that standard, and fails to establish what a reasonably prudent radiologist would have done under the circumstances of this case. We agree.

The cases cited by Hightower likewise support this conclusion. In *Schexnider v. Scott & White Memorial Hosp.*, 906 S.W.2d 659, 661 (Tex.App.—Austin 1995), *rev'd on other grounds*, 940 S.W.2d 594 (Tex.1996), the Austin Court of Appeals held that affidavits filed in support of a summary judgment "must state what the standard is and say what was done to meet it. . . . Affidavits that merely state conclusions are insufficient." Or as stated by the Houston Court of Appeals in *Hall v. Tomball Nursing Center, Inc.*, 926 S.W.2d 617, 620 (Tex.App.—Houston [14th Dist.] 1996, no writ), "the expert must state what the standard is and explain how the defendant's acts met it." This same reasoning applies to the non-movants affidavits when responding to a no-evidence motion for summary judgment.

Like the affidavits in *Schexnider* and *Hall*, Dr. Dryer's supplemental affidavit is conclusory. The affidavit does not state what he contended Dr. Walters did to breach the standard care or how he allegedly "misread" the MRI. More specifically, Dr. Dryer's supplemental affidavit does not state that Dr. Walters failed to recognize MRI evidence of recurrent disc herniation, nor does it otherwise explain why a reasonably prudent radiologist would have come to the same conclusion as Dr. Dryer—whatever that may have been. *See Chopra*, 892 S.W.2d at 233 (noting that a conclusory affidavit failed to address the affiant's diagnosis of the plaintiff's mammogram as negative for cancer or to otherwise explain why a reasonably prudent radiologist would have come to the same conclusion). In short, Dr. Dryer's supplemental affidavit is even more conclusory than the affidavits found to be conclusory in *Schexnider* and *Hall.*

As such, the trial court did not abuse its discretion in sustaining Dr. Walters's objection to Dr. Dryer's supplemental affidavit. *Wolfe*, 24 S.W.3d at 646. As a result, there is no evidence to support Hightower's claim against Dr. Walters, and the trial court properly granted summary judgment in favor of Dr. Walters. Tex.R. Civ. P. 166a(i). Issue four is overruled. We do not reach the remaining issues.

### CONCLUSION

Having found that the trial court did not abuse its discretion in dismissing Hightower's medical malpractice claim against Dr. Saxton, and that the trial court properly granted summary judgment in favor of Dr. Walters, we affirm.