# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00455-CV

**Anthony Davis, Appellant**

**v.**

**Keith L. Markey, M.D. and Patrick F. Kelly, D.O., Appellees**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-03-0637-C, HONORABLE TOM GOSSETT, JUDGE PRESIDING**

## MEMORANDUM OPINION

Appellant Anthony Davis appeals from the dismissal of his medical malpractice claim against Appellees, Keith Markey, M.D. and Patrick Kelly, D.O. Davis alleges that Markey and Kelly were negligent in their treatment of his knee. After both physicians moved for dismissal on the ground that Davis's expert report failed to meet statutory requirements, the district court dismissed the cause. *See* former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01 (Section 13.01).[1] We affirm the judgment of the district court.

---

[1] Act of May 18, 1993, 73d Leg., R.S., ch. 625, § 3, 1993 Tex. Gen. Laws 2347, *amended by* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2004-05)).

**BACKGROUND**

Davis injured his knee in December 2001 and underwent an anterior cruciate ligament reconstruction the following month. Complications arose, and Davis required additional surgeries by several physicians. Davis filed suit on May 28, 2003, alleging that Dr. Keith Markey and Dr. Patrick Kelly committed various acts of negligence while Davis was under their care. Specifically, Davis alleged that Markey failed to use sterile equipment while performing surgery on Davis's knee and that he worsened an infection by prescribing oral Cipro and Cortizone injections after signs of infection appeared. Davis alleged that Kelly delayed in culturing a specimen and in removing or remounting hardware in Davis's knee. He claimed that the negligence of these physicians resulted in "grievous bodily harm and other damages."

On November 13, 2003, pursuant to Section 13.01(d), Davis timely filed an expert report provided by a California physician, Dr. Gregory Bohart. Appellees did not object to the sufficiency of Davis's expert report until they both filed motions to dismiss in March 2004.[2] Kelly's motion contended that Bohart's report failed to set forth the standard of care applicable to Kelly in his treatment of Davis, failed to state how Kelly's treatment fell below that standard of care, and failed to address causation. Markey claimed in his motion that Bohart's report failed to address causation.

---

[2] Section 13.01 did not provide a deadline by which a defendant must object to the adequacy of an expert report. *See generally* Section 13.01. The supreme court held that a defendant could wait until the deadline to file a report passed before filing a motion to dismiss. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003). However, the current statute states that "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2004-05).

After a hearing on the motions, the district court dismissed Davis's claims against both physicians, finding that Bohart's report failed to meet all three requirements of Section 13.01: the standard of care, the manner in which each physician failed to meet the standard, and the causal relationship between that failure and the injury claimed. The court awarded attorney's fees to Kelly in the amount of $14,351.50.

## STANDARD OF REVIEW

We apply an abuse of discretion standard when reviewing all Section 13.01 rulings. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 220 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-242 (Tex. 1985). In reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment. *Wright*, 79 S.W.3d at 52.

Under Section 13.01(d), medical-malpractice plaintiffs were required to provide each defendant physician or health-care provider an expert report, with the expert's curriculum vitae, within 180 days of filing suit. Section 13.01(d); *Palacios*, 46 S.W.3d at 877. The expert report was required to provide a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the damages claimed. Section

3

13.01(r)(6); *Wright*, 79 S.W.3d at 51. According to Section 13.01(l), a court was required to grant a motion to dismiss challenging the adequacy of an expert report only if it appeared to the court, after a hearing, that the report did not represent a good faith effort to comply with the definition of an expert report under 13.01(r)(6). Section 13.01(l); *Wright*, 79 S.W.3d at 51-52.

To constitute a good faith effort to comply with the statutory definition, the report was required to (1) inform the defendant of the specific conduct the plaintiff called into question and (2) provide a basis for the trial court to conclude that the claims had merit. *Wright*, 79 S.W.3d at 52 (citing *Palacios*, 46 S.W.3d at 879). The trial court could look no further than the four corners of the document. *Id*. The report was required to include the expert's opinion on each of the three statutorily required elements: standard of care, breach, and causation. *Id*. The report could not be conclusory; it was required to explain the basis of the expert's statements and link his conclusions to the facts. *Id*.

According to Section 13.01(g), if the court determined that the plaintiff's report did not comply with the statutory definition, the court was required to grant the plaintiff a thirty-day grace period if, after a hearing, the court found that the failure of the plaintiff or plaintiff's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake. Section 13.01(g); *Walker*, 111 S.W.3d at 62. To determine whether the failure to file adequate reports was due to accident or mistake rather than intentional disregard or conscious indifference, the court was required to look to the knowledge and acts of the plaintiff. *Walker*, 111 S.W.3d at 64. A medical-malpractice plaintiff was charged with knowledge of Section 13.01 and its requirements. *Id*. An attorney's mistaken belief that an expert report satisfied the statutory

4

requirements would not negate a finding of intentional disregard or conscious indifference, and thus it would not entitle the plaintiff to a grace period. *Id*. at 65; *Hutchinson v. Montemayor*, 144 S.W.3d 614, 619 (Tex. App.—San Antonio 2004, no pet.); *Hansen v. Starr*, 123 S.W.3d 13, 21 (Tex. App.—Dallas 2003, pet. denied).

Under Section 13.01(e), if the trial court found that the expert report failed to comply with the statutory requirements and that the failure was not an accident or mistake, the court was required to dismiss the plaintiff's claims with prejudice and award reasonable attorney's fees to the defendant. Section 13.01(e).

## ADEQUACY OF EXPERT REPORT

Davis first argues that Bohart's expert report complied with Section 13.01's requirements with regard to both Kelly and Markey. He argues that the report constituted a good-faith effort to provide a fair summary of Bohart's opinions regarding the standard of care applicable to each physician, how each physician breached the standard of care, and how the breach caused Davis's injury.

### Causation

We first address the sufficiency of Bohart's report with regard to causation. To establish causation beyond a mere conclusory statement, a report must provide information linking the expert's conclusion to the physician's alleged breach. *Wright*, 79 S.W.3d at 53. The *Wright* court held that an expert report was conclusory as to causation because the report did not include an explanation of how a hospital's alleged errors caused plaintiff's alleged injury. *Id*. at 53. Barbara

5

Wright was admitted to Bowie Memorial Hospital after she sustained fractures to her right knee and foot in a car accident. After taking x-rays of both the knee and foot, a physician's assistant at the hospital diagnosed her with a fractured knee. However, he had misplaced or misread the foot x-ray, and thus did not discover that Wright had also fractured her foot. A month later, after an operation on her knee, Wright's orthopedic surgeon discovered her foot fracture, requiring two additional surgeries within the next ten months. To establish causation, Wright relied on the following statement from her expert report: "if the x-rays would have been correctly read and the appropriate medical personnel acted upon those findings then Wright would have had the possibility of a better outcome." *Id*. at 52-53. The supreme court held that the statement was conclusory and thus did not constitute a good-faith effort to summarize causation because the report did not provide any information linking the failure to read and act upon the x-rays to the expert's conclusion that Wright would have had a better outcome if not for the breach. *Id*. at 53.

Other courts have similarly held that an expert report is conclusory and inadequate when it fails to provide an explanation connecting the defendant's actions to the plaintiff's alleged injury. *See Lopez v. Montemayor*, 131 S.W.3d 54, 60 (Tex. App.—San Antonio 2003, pet. denied) (holding that expert's statement that "it is the aspiration of the bridge section which caused and precipitated the medical circumstances leading to the patient's demise" was conclusory and insufficient to establish causation because it did not provide information linking dentist's actions to patient's death); *Villa v. Hargrove*, 110 S.W.3d 74, 78-79 (Tex. App.—San Antonio 2003, pet. denied) (finding that expert's statement that "had either of these defendants provided the appropriate care, to an overwhelming probability, [the patient] would be alive and well today" was conclusory

6

and inadequate to show causation because it failed to link actions of physician or medical facility with patient's death); *Hightower v. Saxton*, 54 S.W.3d 380, 385 (Tex. App.—Waco 2001, no pet.) (finding that expert's statement that physician's failure to correctly read MRI scan "was below the standard of care and caused damages and delay of treatment" to patient was insufficient to establish causation because it provided no insight as to a causal relationship between breach and injury). We now turn to the issue of causation with regard to each physician in this case, beginning with Markey.

### Dr. Markey

Davis contends that the report addresses Markey's alleged negligence and its causal link to Davis's injury in the following excerpt:

> Postoperative infections or intraoperative infections can certainly occur after ACL reconstruction surgery and are well known. It is important that they be quickly diagnosed and appropriately treated. It is not uncommon for a hemarthrosis postoperatively to be aspriated [sic] but it is uncommon for a knee to be aspirated on three separate occasions and for cortisone to be injected on each occasion. I would raise questions and I think not considering infection at the time of the last aspiration would be beneath the standard of care. Standard of care would require the surgeon to be vigilant in the postoperative period and would require appropriate analysis of material aspirated from the knee including culture and sensitivity and cell count. This would have allowed for a more timely diagnosis of postoperative infection by Dr. Markey. . . . The sequence and combination of these management errors led to and increased this patient's disability. What began as a simple reconstruction will likely end up with a lifetime of disability for this patient's knee.

Davis argues that the following statement establishes causation as to Markey: "The sequence and combination of these management errors led to and increased this patient's disability. What began as a simple reconstruction will likely end up with a lifetime of disability for this patient's knee." He contends that this statement is not conclusory because it is supported by factual

7

details set forth earlier in the report. Specifically, Davis argues that causation is supported by Bohart's statement that vigilance in the postoperative period and appropriate analysis of material aspirated from the knee would have allowed for a more timely diagnosis of postoperative infection by Markey.

However, like the statement in *Wright*, Bohart's statements here are conclusory and insufficient to establish causation. Bohart fails to link Markey's alleged breach (a failure to be vigilant in the postoperative period and to appropriately analyze material aspirated from Davis's knee) to the conclusion that Markey's errors "increased [Davis's] disability" and caused "a lifetime of disability for [his] knee." For example, Bohart never explains how Markey inappropriately analyzed aspirated material or how such inappropriate analysis would increase Davis's disability or lead to a lifetime of disability. In fact, Bohart never even identifies Davis's disability or how it was worsened by Markey's acts or omissions. Rather, he simply concludes that Markey's conduct caused a lifetime of disability. Such a conclusory statement is not sufficient to establish causation.

### Dr. Kelly

Bohart is similarly conclusory in setting forth causation regarding Kelly's alleged breach. Davis relies on the following excerpt of Bohart's report to describe Kelly's involvement and to establish causation:

> The second surgery was important to remove all foreign material. Dr. Kelly removed the Endo button and a bioabsorbable femoral screw and apparently some of the tibial interference screw but some of it was left behind. Later x-rays suggested there was osteomyelitis in the tibia. I think that standard of care would necessitate over-reaming, particularly the tibial interference tunnel and not over-reaming this tunnel in the setting of osteomyelitis of the tibia would lead to and explain the recurrent

8

infection that occurred after the ACL was later revised. The sequence and combination of these management errors led to and increased this patient's disability. What began as a simple reconstruction will likely end up with a lifetime of disability for this patient's knee.

Davis contends that Bohart's statement that Kelly failed to over-ream provides a factual basis for his conclusion that Kelly's errors caused a lifetime of disability. However, Bohart's statement that Kelly failed to over-ream is a statement of the alleged breach, not a factual statement connecting the breach to the alleged injury. In fact, Bohart wholly fails to provide any information linking a failure to over-ream to his conclusion that Kelly's failure "increased [Davis's] disability" and caused "a lifetime of disability for [his] knee." For example, while Bohart indicates that not over-reaming on the part of Kelly would lead to infection, he never explains how it would cause a worsened injury or a lifetime of disability. In addition, as we have already noted with regard to Markey, Bohart wholly fails to identify Davis's disability or how it was worsened by Kelly's acts or omissions. He merely sets forth a general statement that Kelly's alleged errors increased Davis's disability. Because Bohart's report fails to provide any information linking his conclusion to either physician's alleged breach, the report is conclusory and insufficient to establish causation.

A conclusory report does not meet Section 13.01's requirements because it does not satisfy the *Palacios* test, requiring that the report inform the defendant of the specific conduct the plaintiff is calling into question, and that it provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 879. A report also does not constitute a good-faith effort if it omits any of the statutory requirements. *Id*. Thus, even if we were to find that the elements of standard of care and breach were sufficient, the omission of the causation element still requires

9

dismissal. As a result, we need not decide here whether the standard of care and breach were adequate regarding either physician. Because the report wholly lacked information as to causation for both physicians, we find that the trial court did not abuse its discretion when it concluded that the report failed to meet the requirements of Section 13.01.

## SECTION 13.01(g) GRACE PERIOD

Davis also argues that the trial court erred in denying him a thirty-day grace period to amend his report pursuant to Section 13.01(g). Under that section, a plaintiff was entitled to the grace period if, after a hearing, the court found that the failure of the plaintiff or plaintiff's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake. Section 13.01(g); *Walker*, 111 S.W.3d at 62. The *Walker* court held that the attorney's mistaken belief that the report was adequate did not constitute an "accident or mistake" under the statute. *Id*. at 64-65. In *Walker*, the trial court dismissed the Gutierrez family's medical malpractice lawsuit for failure to provide an expert report that complied with Section 13.01's requirements. *Id*. at 60. The Gutierrezes argued on appeal that they were entitled to a grace period because their attorney "at all times believed that [their] original expert reports satisfied the requirements of Section 13.01(d)." *Id*. at 59-60. The supreme court held that an attorney's mistaken belief that a report complies with Section 13.01 does not negate a finding of intentional or conscious indifference and does not constitute a mistake of law that entitles the plaintiff to a grace period. *Id*. at 64-65; *see*, *e.g.*, *Hutchinson*, 144 S.W.3d at 619; *Hansen*, 123 S.W.3d at 21.

In this case, Davis makes the very argument that the supreme court rejected in *Walker*: that the report's inadequacy was not a result of intentional disregard or conscious

10

indifference because his attorney at all times believed the report complied with Section 13.01's requirements. The attorney's mistaken belief in the adequacy of the report simply does not constitute the type of accident or mistake that entitles a plaintiff to a grace period under Section 13.01(g). We therefore hold that the trial court properly denied Davis's request for a grace period.

## ATTORNEY'S FEES

Davis's final argument is that the trial court erred in granting $14,351.50 in attorney's fees to Kelly.[3] We review a trial court's ruling on attorney's fees under an abuse of discretion standard. *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 220 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (finding that "the abuse-of-discretion standard governs all [Section 13.01] rulings."). Attorney's fees are not recoverable unless a statute or contract between the parties provides for such recovery. *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996); *Grace v. Duke*, 54 S.W.3d 338, 343 (Tex. App.—Austin 2001, pet. denied). According to Section 13.01(e), a court was required to award reasonable attorney's fees to the defendant if the court found that the plaintiff failed to provide an adequate expert report within the time required. Section 13.01(e). Reasonableness of attorney's fees is a question of fact and must be supported by the evidence. *Petco Animal Suppliers, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.). The supreme court has held that a fact-finder should consider eight factors when determining the reasonableness of attorney's fees: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2)

---

[3] Markey's attorney did not testify as to attorney's fees at the hearing.

the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The eight factors are general guidelines, and all of them need not be considered. *Petco*, 144 S.W.3d at 567.

In this case, Davis contends that Kelly could have moved to dismiss for an inadequate report as early as November 24, 2004, the expiration of 180 days, but did not file his motion until four months later, on March 24, 2004. At the hearing, Kelly's attorney testified that her attorney's fees totaled $14,351.50. She testified that she billed $120 per hour, and that her time billed after December 2004 included obtaining Davis's medical records, drafting discovery requests and responses, filing motions to compel discovery, taking Davis's deposition, preparing Kelly for deposition, attending Kelly's deposition, and retaining expert witnesses.

Davis argues that Kelly should not have been awarded the entire amount of fees because Kelly's attorney testified that at least some of the fees were incurred after Kelly could have filed a motion to dismiss. However, none of the eight factors set forth by the supreme court in *Arthur Andersen* implies that a court should consider whether an attorney could have moved for dismissal earlier. The fifth factor, "the time limitations . . . imposed by the circumstances" comes

12

the closest, but Section 13.01 did not impose a deadline to file a motion to dismiss and did not place any other restrictions on attorney's fees other than that they be "reasonable." Thus, Kelly's attorney was not subject to a time limitation in this case. In addition, the mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242. Although the record does not provide information as to why Kelly chose not to move for dismissal earlier, we do not find that the trial court abused its discretion in awarding Kelly attorney's fees accruing until the date of dismissal.

## CONCLUSION

Because the trial court properly exercised its discretion, we affirm the dismissal of Davis's claims against Markey and Kelly, the denial of a grace period, and the award of reasonable attorney's fees.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   March 24, 2005

13