Affirmed and Memorandum Opinion filed September 19, 2006








Affirmed and Memorandum Opinion filed September 19, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00606-CV

_______________

 

KAY DENICE LOPEZ and MARK ANTHONY LOPEZ, Appellants

 

V.

 

ANIL KUMAR SINHA, M.D. and PHILIP SEU, M.D., Appellees

                                                                                                                                               


On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 04-73131

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N








Appellants,
Kay Denice Lopez and Mark Anthony Lopez, appeal from the trial court=s orders dismissing their health care
liability claims against appellees, Anil Kumar Sinha, M.D. and Philip Seu,
M.D.  The claims arose from complications following a cholecystectomy. 
Appellants contend the trial court erred by granting appellees= motions to dismiss after determining
(1) appellants failed to timely serve an expert report, and (2) appellants= expert report did not represent an
objective  good faith effort to comply with the definition of expert report
under section 74.351 of the Texas Civil Practice and Remedies Code.  Because
all dispositive issues are clearly settled in law, we issue this memorandum
opinion and affirm.  See Tex. R.
App. P. 47.4.  

I.  Standard of Review

We
review a trial court=s decision to grant or deny a motion to dismiss health
liability claims under section 74.351 of the Texas Civil Practice and Remedies
Code for an abuse of discretion.  See Mokkala v. Mead, 178 S.W.3d 66, 70
(Tex. App.CHouston [14th Dist.] 2005, pet. filed) (applying an abuse of discretion
standard to determine whether the trial court properly dismissed health
liability claims for failure to timely serve an expert report under section
74.351); Kendrick v. Garcia, 171 S.W.3d 698, 702B03 (Tex. App.CEastland 2005, pet. filed) (applying
abuse of discretion standard to determine whether the trial court dismissed
health liability claims because the expert report was inadequate under section
74.351); see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,
46 S.W.3d 873, 877B78 (Tex. 2001) (determining courts should review the adequacy
of an expert report for abuse of discretion standard under a former version of
the statute).[1]   A trial
court abuses its discretion when it acts arbitrarily or without regard to any
guiding principles.  Mokkala, 178 S.W.3d at 70.  We defer to the trial
court=s factual determinations, but review
questions of law, including questions of statutory interpretation, de novo.  Id.
 Because of differences in the relevant facts, we will address the trial
court=s orders dismissing the claims
against each doctor separately.








II.  Claims Against Dr. Sinha

With
respect to Dr. Sinha, appellants contend the trial court erred by dismissing
the claims for failure to timely serve an expert report under section
74.351(a).  The former version of section 74.351(a) applicable to this case
provided as follows: 

In a health
care liability claim, a claimant shall, not later than the 120th day after the
date the claim was filed, serve on each party or the party=s attorney one or more expert reports, with a
curriculum vitae of each expert listed in the report for each physician or
health care provider against whom a liability claim is asserted.  

Act of June 2, 2003, 78th
Leg., R.S., ch. 204 ' 10.09, 2003 Tex. Gen. Laws 884 (amended 2005) (current
version at Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(a) (Vernon Supp. 2006)) (emphasis added).

Appellants
filed their original petition in Brazoria County on June 7, 2004, but venue was
later transferred to Harris County.  Appellants concede they served their
expert report on Dr. Sinha over 120 days after they had filed their claims in
Brazoria County.  However, appellants contend a motion to transfer venue
operates to restart the 120-day period.  We disagree.

When a
motion to transfer venue is granted, the case stands as though it had been
originally filed in the transferee county.  Whitson v. Harris, 792
S.W.2d 206, 209 (Tex. App.CAustin 1990, writ denied).  Moreover, here, the 120-day
period expired approximately two weeks before the trial court granted the order
to transfer venue. 








Nonetheless,
appellants maintain the 120-day period was tolled because the motion to transfer
venue was filed one day before the 120-day period would have otherwise
expired.  Appellants do not cite any authority supporting their contention that
the expert report deadline or any other deadline is tolled upon the filing of a
motion to transfer venue. With respect to discovery in general, the Texas Rules
of Civil Procedure provide that Adiscovery shall not be abated or
otherwise affected by pendency of a motion to transfer venue.@  Tex.
R. Civ. P. 88.   In the absence of any authority to the contrary, we
conclude that a motion to transfer venue also has no effect on the deadline to
serve an expert report.  

Alternatively,
appellants argue that a new 120-day period began either when the motion was
granted or when the case was refiled in Harris County.  See Tex. R. Civ. P. 89 (requiring the
plaintiff to pay a new filing fee to the court in the transferee county). 
Appellants contend the original claims are dismissed or nonsuited, and a new
suit begins when a motion to transfer venue is granted and the suit is
refiled.  However, Rule 89 of the Texas Rules of Civil Procedure provides a
cause of action Ashall not be dismissed@ if a motion to transfer venue is
sustained.  Tex. R. Civ. P. 89. 
Therefore, appellants= contention that a motion to transfer venue operates as a
nonsuit or dismissal is unavailing.  Cf. Mokkala, 178 S.W.3d at 66
(holding the 120-day period was not restarted after plaintiffs nonsuited and
refiled their claims).   








Appellants
also analogize a transfer of venue to removal of a case to federal court with
diversity or federal-question jurisdiction.  See 28 U.S.C. ' 1331 (2000) (granting federal courts
original jurisdiction of all civil cases arising under the Constitution, laws,
or treaties of the United States); 28 U.S.C. ' 1332 (2000) (granting federal courts
original jurisdiction when the amount in controversy exceeds $75,000 and
diversity of citizenship is established).  However, unlike removal to federal
jurisdiction, the Texas Civil Practice and Remedies Code and the Texas Rules of
Civil Procedure continue to govern claims when venue is transferred.  As
discussed above, the Texas Civil Practice and Remedies Code provides that an
expert report must be filed 120 days after the date a health care liability
claim is filed. Act of June 2, 2003, 78th Leg., R.S., ch. 204 '10.09, 2003 Tex. Gen. Laws 884
(amended 2005). A Ahealth care liability claim@ is defined in relevant part as Aa cause of action against a health
care provider or physician for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care . . . .@ Tex.
Civ. Prac. & Rem. Code Ann. ' 74.001(a)(13) (Vernon 2005). 
Further, under the Rules of Civil Procedure, discovery is not abated or
otherwise affected by a motion to transfer venue, and the claims are not
dismissed when the motion is sustained.  Tex.
R. Civ. P. 88, 89.

 Here,
appellants filed their health care liability claims in Brazoria County. 
Appellants did not amend their petition at any time to add new claims.  Cf.
Puls v. Columbia Hosp. at Medical City Dallas Subsidiary, L.P., 92 S.W.3d
613, 617B18 (Tex. App.CDallas 2002, pet. denied) (holding
the 120-day period for serving an expert report was triggered by filing a
particular health care liability claim as opposed to a lawsuit; thus, if a
plaintiff amends the petition to add a new claim, another 120-day period
begins).  Accordingly, we conclude that the 120-day period here expired 120
days from date the claims were filed in Brazoria County, and not the date the
petition was refiled in Harris County asserting the same claims.  To hold
otherwise would be inconsistent with the plain meaning of the statute and with
the legislative objective to reduce the frequency and costs of health care
liability claims.  See Mokkala, 178 S.W.3d at 74 (discussing the
legislative history and objectives of section 74.351).  Because appellants
failed to serve an expert report on Dr. Sinha within 120 days of filing their
claims, the trial court properly granted Dr. Sinha=s motion to dismiss.  Accordingly, we
overrule appellants= issues as they relate to Dr. Sinha.

III.  Claims Against Dr. Seu

With
respect to Dr. Seu, appellants contend the expert report was timely served
because Dr. Seu was not served with the original petition until the trial court
granted a motion for substitute service after venue was transferred to Harris
County.  However, we need not determine whether appellants timely served the
expert report.  Even if appellants timely served the expert report, the report
did not represent an objective good faith effort to comply with the definition
of an expert report.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(l) (Vernon 2005). 








A trial
court Ashall grant a motion challenging the
adequacy of an expert report only if it appears to the court, after hearing,
that the report does not represent an objective good faith effort to comply
with the definition of an expert report . . . .@  Id.  An expert report is defined as Aa written report by an expert that
provides a fair summary of the expert=s opinions as of the date of the
report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and injury, harm, or damages
claimed.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6) (Vernon 2005).  

 To
constitute a good-faith effort, an expert report must provide enough
information to fulfill two purposes: (1) the report must inform the defendant
of the specific conduct called into question; and (2) the report must provide a
basis for the trial court to conclude the plaintiff=s claims have merit.  Palacios,
46 S.W.3d at 879.   The expert report must include all the required information
within its four corners.  Id. at 878.  Although the report Aneed not marshal all the plaintiff=s proof,@ a report that merely states an expert=s conclusions about the standard of
care, breach, and causation is insufficient.  See id. at 878B79. 

The
portion of appellants= expert report relevant to Dr. Seu is as follows:         

            The standard of practice for the management of a post
cholecystectomy bile leak includes complete evacuation of the intraabdominal
bile to prevent corrosive effects of the bile and subsequent potential
infection.  Failure to completely evacuate a primary or recurrent biloma in the
gallbladder fossa can lead to significant injury to adjacent structures. 
Stricture from extrinsic compression, inflammation, and fibrosis is well known
to occur.  A stricture can be multifactorial as in this patient including
operative injury, the result of undrained bile and infection in the gallbladder
fossa and porta hepatis area, and potential ischemia from use of cautery on the
duct itself.  








The patient=s clinical course is due to a combination of
preventable error in technique at the time of March 29, 2002 cholecystectomy,
as well as failure to aggressively and completely evacuate bile that leaked
into the abdominal cavity.  Dr. Anil Sinha fell below the standard of practice
in the performance of surgery of 3/29/04.  Dr. Philip Seu fell below the
standard of care in the management of this patient=s bile leak.  In all probability, but for these
violations of the standard of care the subsequent interventions and surgical
procedure would not have been necessary.  

 

Appellants
contend the standard of care applicable to Dr. Seu Aincludes the complete evacuation of
the intra-abdominal bile . . .,@ and Dr. Seu breached this standard of care by failing to
manage the bile leak, including Aaggressively and completely@ evacuating the bile.  However, these
statements are conclusory.  The expert report does not include Aspecific information about what the
defendant should have done differently.@  See id.  at 880.  Rather,
the expert provides a resultCcomplete evacuation of bile Cwithout explaining the specific
conduct necessary to achieve the result.  There is no description of the
procedure that should be followed when evacuating bile from an abdominal
cavity, and there is no explanation as to how Dr. Seu failed to follow the
procedure or what Dr. Seu should have done differently.  Cf. id. (holding
an expert=s statement that a hospital failed to take appropriate precautions to
prevent a patient=s fall was conclusory because there was no information
indicating whether the hospital should have Amonitored [the patient] more closely,
restrained him more securely, or done something else entirely@); Hightower v. Saxton, 54
S.W.3d 380, 384B85 (Tex. App.CWaco 2001, no pet.) (expert=s statement that surgeon=s incorrect reading of an MRI scan
fell below the standard of care insufficient to establish standard of care and
breach because the report Afailed to inform the manner in which [the surgeon] failed to
meet any unstated standard of care@).  Accordingly, we conclude the
trial court could have reasonably determined the statements concerning standard
of care and breach were conclusory and did not represent an objective
good-faith effort.  








The
report also fails to provide any information linking Dr. Seu=s specific conduct with the plaintiff=s injuries.  Appellants primarily
rely on the following two statements to establish causation: (1) AIn all probability, but for these
violations of the standard of care the subsequent interventions and surgical
procedure would not have been necessary@; and (2) AA stricture can be multifactorial as
in this patient including operative injury, the result of undrained bile and
infection in the gallbladder fossa and porta hepatis area, and potential
ischemia from use of cautery on the duct itself.@  

Again,
however, the statements as to causation are conclusory.  There is no
explanation as to what role Dr. Seu=s specific conduct played in causing
the subsequent interventions.  There is also no indication as to which of the
multiple subsequent interventions and/or surgical procedure was caused by Dr.
Seu=s conduct.  Although the expert
listed several potential problems that can occur when bile is not completely
evacuated, the expert did not specify whether appellant experienced all or some
of those problems.  The expert appears to indicate appellant experienced a
stricture caused in part by unevacuated bile, but the expert does not describe
what connection, if any, the stricture had with respect to the subsequent
interventions allegedly necessary because of Dr. Seu=s conduct.  See Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 53B54 (Tex. 2002) (finding no abuse of
discretion when the report=s statement as to causation was conclusory and did not
identify the specific injuries allegedly caused by the defendant); Earle v.
Ratliff, 998 S.W.2d 882, 890 (Tex. 1999) (noting an expert Amust explain the basis of his
statements to link his conclusions to the facts@).  Accordingly, we conclude the
trial court could have reasonably determined the report does not represent a
good-faith effort to summarize the causal relationship between Dr. Seu=s specific conduct and appellants= injuries.  Cf. Bowie, 79
S.W.3d at 52B54 (expert=s statement that Aif the x-rays would have been
correctly read and the appropriate medical personnel acted upon those findings
then [plaintiff] would have had the possibility of a better outcome@ insufficient to establish
causation); Hightower, 54 S.W.3d at 384B85 (Tex. App.CWaco 2001, no pet.) (expert=s statement that surgeon=s failure to correctly read an MRI
scan Acaused damages and delay of treatment@ insufficient to establish
causation). 








When
reviewing matters within the trial court=s discretion, we must not substitute
our judgment for the trial court=s judgment.  Bowie, 79 S.W.3d
at 52.  Because the statements in the report with respect to the standard of
care, breach, and causation are conclusory, we cannot conclude the trial court
abused its discretion by determining the report does not represent an objective
good-faith effort to comply with the statutory requirements.  The trial court
properly granted Dr. Seu=s motion to dismiss.  Accordingly, we overrule appellants= issues as they relate to Dr. Seu.

The
judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed September 19, 2006.

Panel consists of Justices Hudson,
Fowler, and Seymore.

 

 

 









[1]  At least one court of appeals has expressed doubt as
to whether the abuse of discretion standard applicable under the former statute
continues to apply.  See Kendrick, 171 S.W.3d at 702B03. However, courts have consistently applied the
abuse of discretion standard to the current statute; therefore, in the absence
of contrary authority, we also review the trial court=s ruling for abuse of discretion.  See, e.g., id;
Mokkala  178 S.W.3d at 70; In re Covenant Health Sys., No.
07-05-0462-CV, 2006 WL 508027, at *1 (Tex. App.CAmarillo Mar. 1, 2006, no pet.).