TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-04-00455-CV




Anthony Davis, Appellant

v.

Keith L. Markey, M.D. and Patrick F. Kelly, D.O., Appellees





FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT
NO. C-03-0637-C, HONORABLE TOM GOSSETT, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


                        Appellant Anthony Davis appeals from the dismissal of his medical malpractice claim
against Appellees, Keith Markey, M.D. and Patrick Kelly, D.O. Davis alleges that Markey and Kelly
were negligent in their treatment of his knee. After both physicians moved for dismissal on the
ground that Davis’s expert report failed to meet statutory requirements, the district court dismissed
the cause. See former Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01 (Section 13.01).


 We affirm the
judgment of the district court.

BACKGROUND
                        Davis injured his knee in December 2001 and underwent an anterior cruciate ligament
reconstruction the following month. Complications arose, and Davis required additional surgeries
by several physicians. Davis filed suit on May 28, 2003, alleging that Dr. Keith Markey and Dr.
Patrick Kelly committed various acts of negligence while Davis was under their care. Specifically,
Davis alleged that Markey failed to use sterile equipment while performing surgery on Davis’s knee
and that he worsened an infection by prescribing oral Cipro and Cortizone injections after signs of
infection appeared. Davis alleged that Kelly delayed in culturing a specimen and in removing or
remounting hardware in Davis’s knee. He claimed that the negligence of these physicians resulted
in “grievous bodily harm and other damages.”
                        On November 13, 2003, pursuant to Section 13.01(d), Davis timely filed an expert
report provided by a California physician, Dr. Gregory Bohart. Appellees did not object to the
sufficiency of Davis’s expert report until they both filed motions to dismiss in March 2004.


 Kelly’s
motion contended that Bohart’s report failed to set forth the standard of care applicable to Kelly in
his treatment of Davis, failed to state how Kelly’s treatment fell below that standard of care, and
failed to address causation. Markey claimed in his motion that Bohart’s report failed to address
causation.
                        After a hearing on the motions, the district court dismissed Davis’s claims against
both physicians, finding that Bohart’s report failed to meet all three requirements of Section 13.01:
the standard of care, the manner in which each physician failed to meet the standard, and the causal
relationship between that failure and the injury claimed. The court awarded attorney’s fees to Kelly
in the amount of $14,351.50.

STANDARD OF REVIEW
                        We apply an abuse of discretion standard when reviewing all Section 13.01 rulings.
Walker v. Gutierrez, 111 S.W.3d 56, 62 (Tex. 2003); Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48,
52 (Tex. 2002); American Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878
(Tex. 2001); Strom v. Mem’l Hermann Hosp. Sys., 110 S.W.3d 216, 220 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable
manner without reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-242 (Tex. 1985). In reviewing matters committed to the trial court’s
discretion, a court of appeals may not substitute its own judgment for the trial court’s judgment. 
Wright, 79 S.W.3d at 52.
                        Under Section 13.01(d), medical-malpractice plaintiffs were required to provide each
defendant physician or health-care provider an expert report, with the expert’s curriculum vitae,
within 180 days of filing suit. Section 13.01(d); Palacios, 46 S.W.3d at 877. The expert report was
required to provide a fair summary of the expert’s opinions regarding applicable standards of care,
the manner in which the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between that failure and the damages claimed. Section
13.01(r)(6); Wright, 79 S.W.3d at 51. According to Section 13.01(l), a court was required to grant
a motion to dismiss challenging the adequacy of an expert report only if it appeared to the court, after
a hearing, that the report did not represent a good faith effort to comply with the definition of an
expert report under 13.01(r)(6). Section 13.01(l); Wright, 79 S.W.3d at 51-52.
                        To constitute a good faith effort to comply with the statutory definition, the report was
required to (1) inform the defendant of the specific conduct the plaintiff called into question and (2)
provide a basis for the trial court to conclude that the claims had merit. Wright, 79 S.W.3d at 52
(citing Palacios, 46 S.W.3d at 879). The trial court could look no further than the four corners of
the document. Id. The report was required to include the expert’s opinion on each of the three
statutorily required elements: standard of care, breach, and causation. Id. The report could not be
conclusory; it was required to explain the basis of the expert’s statements and link his conclusions
to the facts. Id.
                        According to Section 13.01(g), if the court determined that the plaintiff’s report did
not comply with the statutory definition, the court was required to grant the plaintiff a thirty-day
grace period if, after a hearing, the court found that the failure of the plaintiff or plaintiff’s attorney
was not intentional or the result of conscious indifference but was the result of an accident or
mistake. Section 13.01(g); Walker, 111 S.W.3d at 62. To determine whether the failure to file
adequate reports was due to accident or mistake rather than intentional disregard or conscious
indifference, the court was required to look to the knowledge and acts of the plaintiff. Walker, 111
S.W.3d at 64. A medical-malpractice plaintiff was charged with knowledge of Section 13.01 and
its requirements. Id. An attorney’s mistaken belief that an expert report satisfied the statutory
requirements would not negate a finding of intentional disregard or conscious indifference, and thus
it would not entitle the plaintiff to a grace period. Id. at 65; Hutchinson v. Montemayor, 144 S.W.3d
614, 619 (Tex. App.—San Antonio 2004, no pet.); Hansen v. Starr, 123 S.W.3d 13, 21 (Tex.
App.—Dallas 2003, pet. denied).
                        Under Section 13.01(e), if the trial court found that the expert report failed to comply
with the statutory requirements and that the failure was not an accident or mistake, the court was
required to dismiss the plaintiff’s claims with prejudice and award reasonable attorney’s fees to the
defendant. Section 13.01(e).

ADEQUACY OF EXPERT REPORT
                        Davis first argues that Bohart’s expert report complied with Section 13.01's
requirements with regard to both Kelly and Markey. He argues that the report constituted a good-faith effort to provide a fair summary of Bohart’s opinions regarding the standard of care applicable
to each physician, how each physician breached the standard of care, and how the breach caused
Davis’s injury.

Causation
                        We first address the sufficiency of Bohart’s report with regard to causation. To
establish causation beyond a mere conclusory statement, a report must provide information linking
the expert’s conclusion to the physician’s alleged breach. Wright, 79 S.W.3d at 53. The Wright
court held that an expert report was conclusory as to causation because the report did not include an
explanation of how a hospital’s alleged errors caused plaintiff’s alleged injury. Id. at 53. Barbara
Wright was admitted to Bowie Memorial Hospital after she sustained fractures to her right knee and
foot in a car accident. After taking x-rays of both the knee and foot, a physician’s assistant at the
hospital diagnosed her with a fractured knee. However, he had misplaced or misread the foot x-ray,
and thus did not discover that Wright had also fractured her foot. A month later, after an operation
on her knee, Wright’s orthopedic surgeon discovered her foot fracture, requiring two additional
surgeries within the next ten months. To establish causation, Wright relied on the following
statement from her expert report: “if the x-rays would have been correctly read and the appropriate
medical personnel acted upon those findings then Wright would have had the possibility of a better
outcome.” Id. at 52-53. The supreme court held that the statement was conclusory and thus did not
constitute a good-faith effort to summarize causation because the report did not provide any
information linking the failure to read and act upon the x-rays to the expert’s conclusion that Wright
would have had a better outcome if not for the breach. Id. at 53.
                        Other courts have similarly held that an expert report is conclusory and inadequate
when it fails to provide an explanation connecting the defendant’s actions to the plaintiff’s alleged
injury. See Lopez v. Montemayor, 131 S.W.3d 54, 60 (Tex. App.—San Antonio 2003, pet. denied)
(holding that expert’s statement that “it is the aspiration of the bridge section which caused and
precipitated the medical circumstances leading to the patient’s demise” was conclusory and
insufficient to establish causation because it did not provide information linking dentist’s actions to
patient’s death); Villa v. Hargrove, 110 S.W.3d 74, 78-79 (Tex. App.—San Antonio 2003, pet.
denied) (finding that expert’s statement that “had either of these defendants provided the appropriate
care, to an overwhelming probability, [the patient] would be alive and well today” was conclusory
and inadequate to show causation because it failed to link actions of physician or medical facility
with patient’s death); Hightower v. Saxton, 54 S.W.3d 380, 385 (Tex. App.—Waco 2001, no pet.)
(finding that expert’s statement that physician’s failure to correctly read MRI scan “was below the
standard of care and caused damages and delay of treatment” to patient was insufficient to establish
causation because it provided no insight as to a causal relationship between breach and injury). We
now turn to the issue of causation with regard to each physician in this case, beginning with Markey.

       Dr. Markey

                        Davis contends that the report addresses Markey’s alleged negligence and its causal
link to Davis’s injury in the following excerpt: 

Postoperative infections or intraoperative infections can certainly occur after ACL
reconstruction surgery and are well known. It is important that they be quickly
diagnosed and appropriately treated. It is not uncommon for a hemarthrosis
postoperatively to be aspriated [sic] but it is uncommon for a knee to be aspirated on
three separate occasions and for cortisone to be injected on each occasion. I would
raise questions and I think not considering infection at the time of the last aspiration
would be beneath the standard of care. Standard of care would require the surgeon
to be vigilant in the postoperative period and would require appropriate analysis of
material aspirated from the knee including culture and sensitivity and cell count. 
This would have allowed for a more timely diagnosis of postoperative infection by
Dr. Markey. . . . The sequence and combination of these management errors led to
and increased this patient’s disability. What began as a simple reconstruction will
likely end up with a lifetime of disability for this patient’s knee.
 
 
                        Davis argues that the following statement establishes causation as to Markey: “The
sequence and combination of these management errors led to and increased this patient’s disability. 
What began as a simple reconstruction will likely end up with a lifetime of disability for this
patient’s knee.” He contends that this statement is not conclusory because it is supported by factual
details set forth earlier in the report. Specifically, Davis argues that causation is supported by
Bohart’s statement that vigilance in the postoperative period and appropriate analysis of material
aspirated from the knee would have allowed for a more timely diagnosis of postoperative infection
by Markey.
                        However, like the statement in Wright, Bohart’s statements here are conclusory and
insufficient to establish causation. Bohart fails to link Markey’s alleged breach (a failure to be
vigilant in the postoperative period and to appropriately analyze material aspirated from Davis’s
knee) to the conclusion that Markey’s errors “increased [Davis’s] disability” and caused “a lifetime
of disability for [his] knee.” For example, Bohart never explains how Markey inappropriately
analyzed aspirated material or how such inappropriate analysis would increase Davis’s disability or
lead to a lifetime of disability. In fact, Bohart never even identifies Davis’s disability or how it was
worsened by Markey’s acts or omissions. Rather, he simply concludes that Markey’s conduct caused
a lifetime of disability. Such a conclusory statement is not sufficient to establish causation. 

       Dr. Kelly 
                        Bohart is similarly conclusory in setting forth causation regarding Kelly’s alleged
breach. Davis relies on the following excerpt of Bohart’s report to describe Kelly’s involvement and
to establish causation:

The second surgery was important to remove all foreign material. Dr. Kelly removed
the Endo button and a bioabsorbable femoral screw and apparently some of the tibial
interference screw but some of it was left behind. Later x-rays suggested there was
osteomyelitis in the tibia. I think that standard of care would necessitate over-reaming, particularly the tibial interference tunnel and not over-reaming this tunnel
in the setting of osteomyelitis of the tibia would lead to and explain the recurrent
infection that occurred after the ACL was later revised. The sequence and
combination of these management errors led to and increased this patient’s disability. 
What began as a simple reconstruction will likely end up with a lifetime of disability
for this patient’s knee.
 
 
                        Davis contends that Bohart’s statement that Kelly failed to over-ream provides a
factual basis for his conclusion that Kelly’s errors caused a lifetime of disability. However, Bohart’s
statement that Kelly failed to over-ream is a statement of the alleged breach, not a factual statement
connecting the breach to the alleged injury. In fact, Bohart wholly fails to provide any information
linking a failure to over-ream to his conclusion that Kelly’s failure “increased [Davis’s] disability”
and caused “a lifetime of disability for [his] knee.” For example, while Bohart indicates that not
over-reaming on the part of Kelly would lead to infection, he never explains how it would cause a
worsened injury or a lifetime of disability. In addition, as we have already noted with regard to
Markey, Bohart wholly fails to identify Davis’s disability or how it was worsened by Kelly’s acts
or omissions. He merely sets forth a general statement that Kelly’s alleged errors increased Davis’s
disability. Because Bohart’s report fails to provide any information linking his conclusion to either
physician’s alleged breach, the report is conclusory and insufficient to establish causation.
                        A conclusory report does not meet Section 13.01's requirements because it does not
satisfy the Palacios test, requiring that the report inform the defendant of the specific conduct the
plaintiff is calling into question, and that it provide a basis for the trial court to conclude that the
claims have merit. Palacios, 46 S.W.3d at 879. A report also does not constitute a good-faith effort
if it omits any of the statutory requirements. Id. Thus, even if we were to find that the elements of
standard of care and breach were sufficient, the omission of the causation element still requires
dismissal. As a result, we need not decide here whether the standard of care and breach were
adequate regarding either physician. Because the report wholly lacked information as to causation
for both physicians, we find that the trial court did not abuse its discretion when it concluded that
the report failed to meet the requirements of Section 13.01.

SECTION 13.01(g) GRACE PERIOD
                        Davis also argues that the trial court erred in denying him a thirty-day grace period
to amend his report pursuant to Section 13.01(g). Under that section, a plaintiff was entitled to the
grace period if, after a hearing, the court found that the failure of the plaintiff or plaintiff’s attorney
was not intentional or the result of conscious indifference but was the result of an accident or
mistake. Section 13.01(g); Walker, 111 S.W.3d at 62. The Walker court held that the attorney’s
mistaken belief that the report was adequate did not constitute an “accident or mistake” under the
statute. Id. at 64-65. In Walker, the trial court dismissed the Gutierrez family’s medical malpractice
lawsuit for failure to provide an expert report that complied with Section 13.01's requirements. Id.
at 60. The Gutierrezes argued on appeal that they were entitled to a grace period because their
attorney “at all times believed that [their] original expert reports satisfied the requirements of Section
13.01(d).” Id. at 59-60. The supreme court held that an attorney’s mistaken belief that a report
complies with Section 13.01 does not negate a finding of intentional or conscious indifference and
does not constitute a mistake of law that entitles the plaintiff to a grace period. Id. at 64-65; see, e.g.,
Hutchinson, 144 S.W.3d at 619; Hansen, 123 S.W.3d at 21.
                        In this case, Davis makes the very argument that the supreme court rejected in
Walker: that the report’s inadequacy was not a result of intentional disregard or conscious
indifference because his attorney at all times believed the report complied with Section 13.01's
requirements. The attorney’s mistaken belief in the adequacy of the report simply does not constitute
the type of accident or mistake that entitles a plaintiff to a grace period under Section 13.01(g). We
therefore hold that the trial court properly denied Davis’s request for a grace period. 

ATTORNEY’S FEES
                        Davis’s final argument is that the trial court erred in granting $14,351.50 in attorney’s
fees to Kelly.


 We review a trial court’s ruling on attorney’s fees under an abuse of discretion
standard. Strom v. Mem’l Hermann Hosp. Sys., 110 S.W.3d 216, 220 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied) (finding that “the abuse-of-discretion standard governs all [Section 13.01]
rulings.”). Attorney’s fees are not recoverable unless a statute or contract between the parties
provides for such recovery. Travelers Indem. Co. v. Mayfield, 923 S.W.2d 590, 593 (Tex. 1996);
Grace v. Duke, 54 S.W.3d 338, 343 (Tex. App.—Austin 2001, pet. denied). According to Section
13.01(e), a court was required to award reasonable attorney’s fees to the defendant if the court found
that the plaintiff failed to provide an adequate expert report within the time required. Section
13.01(e). Reasonableness of attorney’s fees is a question of fact and must be supported by the
evidence. Petco Animal Suppliers, Inc. v. Schuster, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004,
no pet.). The supreme court has held that a fact-finder should consider eight factors when
determining the reasonableness of attorney’s fees: (1) the time and labor required, the novelty and
difficulty of the questions involved, and the skill required to perform the legal service properly; (2)
the likelihood that the acceptance of the particular employment will preclude other employment by
the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount
involved and the results obtained; (5) the time limitations imposed by the client or by the
circumstances; (6) the nature and length of the professional relationship with the client; (7) the
experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether
the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services
have been rendered. Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex.
1997). The eight factors are general guidelines, and all of them need not be considered. Petco, 144
S.W.3d at 567.
                        In this case, Davis contends that Kelly could have moved to dismiss for an inadequate
report as early as November 24, 2004, the expiration of 180 days, but did not file his motion until
four months later, on March 24, 2004. At the hearing, Kelly’s attorney testified that her attorney’s
fees totaled $14,351.50. She testified that she billed $120 per hour, and that her time billed after
December 2004 included obtaining Davis’s medical records, drafting discovery requests and
responses, filing motions to compel discovery, taking Davis’s deposition, preparing Kelly for
deposition, attending Kelly’s deposition, and retaining expert witnesses.
                        Davis argues that Kelly should not have been awarded the entire amount of fees
because Kelly’s attorney testified that at least some of the fees were incurred after Kelly could have
filed a motion to dismiss. However, none of the eight factors set forth by the supreme court in
Arthur Andersen implies that a court should consider whether an attorney could have moved for
dismissal earlier. The fifth factor, “the time limitations . . . imposed by the circumstances” comes
the closest, but Section 13.01 did not impose a deadline to file a motion to dismiss and did not place
any other restrictions on attorney’s fees other than that they be “reasonable.” Thus, Kelly’s attorney
was not subject to a time limitation in this case. In addition, the mere fact that a trial judge may
decide a matter within his discretionary authority in a different manner than an appellate judge in a
similar circumstance does not demonstrate that an abuse of discretion has occurred. Downer, 701
S.W.2d at 242. Although the record does not provide information as to why Kelly chose not to move
for dismissal earlier, we do not find that the trial court abused its discretion in awarding Kelly
attorney’s fees accruing until the date of dismissal.

CONCLUSION
                        Because the trial court properly exercised its discretion, we affirm the dismissal of
Davis’s claims against Markey and Kelly, the denial of a grace period, and the award of reasonable
attorney’s fees.
 
 
                                                                                                                                                             
                                                                        Bea Ann Smith, Justice
Before Justices B. A. Smith, Puryear and Pemberton
Affirmed
Filed: March 24, 2005